# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
June 14, 2021

Lyle W. Cayce
Clerk

No. 20-30589
Summary Calendar

United States of America,

*Plaintiff—Appellee*,

*versus*

Kelvin Dwayne Broadway,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 5:19-CR-204-1

Before Clement, Higginson, and Engelhardt, *Circuit Judges*.
Per Curiam:*

Kelvin Dwayne Broadway entered a conditional guilty plea to possession of firearms and ammunition by a convicted felon in violation of 18 U.S.C. § 922(g)(1), and he was sentenced to 57 months of imprisonment and three years of supervised release. He appeals the district court's denial

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

of his motion to suppress. Broadway argues that his motion to suppress should have been granted because the traffic stop of the vehicle in which he was a passenger was not justified at its inception. He contends that the BOLO alert did not provide a lawful basis for the stop. He asserts that the officer ignored the BOLO details that could have justified a traffic stop and decided to stop every white sedan with black men inside. He further argues that the information in the BOLO had gone stale, and that the officer was unable to offer any particularized, reasonable suspicion that the occupants of the Kia Rio were involved in illegal activity.

When reviewing a denial of a motion to suppress, we review factual findings for clear error and conclusions of law de novo. *United States v. Andres*, 703 F.3d 828, 832 (5th Cir. 2013). In reviewing findings of fact, the evidence is viewed in the light most favorable to the prevailing party, in this case, the Government. *Id.* The constitutionality of a traffic stop is examined under the two-pronged analysis described in *Terry v. Ohio*, 392 U.S. 1 (1968). *Andres*, 703 F.3d at 832. At the first step, we must "determine[s] whether the stop was justified at its inception." *Id.* Broadway challenges the first part of the analysis only.

"For a traffic stop to be justified at its inception, an officer must have an objectively reasonable suspicion that some sort of illegal activity . . . occurred, or is about to occur, before stopping the vehicle." *United States v. Lopez-Moreno*, 420 F.3d 420, 430 (5th Cir. 2005). "[R]easonable suspicion exists when the officer can point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the . . . seizure." *Id.* In making a reasonable suspicion determination, a court "must look at the 'totality of the circumstances' of each case to see whether the detaining officer ha[d] a 'particularized and objective basis' for suspecting legal wrongdoing." *United States v. Arvizu*, 534 U.S. 266, 273 (2002). A tip from an informant, anonymous or otherwise, may provide reasonable

suspicion. *United States v. Hernandez*, 477 F.3d 210, 214 (5th Cir. 2007). The factors to be considered are (1) the credibility and reliability of the informant; (2) the specificity of the information provided in the tip or BOLO; (3) the ability of the officers in the field to verify the information; and (4) whether the tip concerns active or recent activity. *Id.*

Officer Jackson testified that based on the BOLO from dispatch issued after a 911 call reporting a shooting, he was looking for a white sedan similar in appearance to the Chevy Cruze or Chrysler 200 with two black male occupants coming from the direction of the shooting towards Viking Drive. Officer Jackson explained why he determined that the vehicle he stopped could have been the one described in the BOLO. He testified that he observed a white, four-door sedan with two black males heading towards Viking Drive from the direction of the shooting. The white sedan, the two black male occupants, and the direction of travel matched the description in the BOLO. Officer Jackson stopped the vehicle, which turned out to be a Kia Rio. The Kia Rio, the Chevy Cruze sedan, Chevy Cruze hatchback and the Chrysler 200, all compact four-door sedans, appear very similar. Officer Jackson testified that if the vehicle had been travelling away from Viking Drive and not coming from the direction of the shooting, he would not have stopped the car. Although the driver and passenger were not wearing clothing as described in the BOLO, Officer Jackson testified that when he saw the vehicle pass in front of him, he could not see what the occupants were wearing. He also testified that he was not necessarily looking for a car with tinted windows, and he could not recall if the Kia Rio had tinted windows.

Officer Jackson verified the information in the BOLO to the best of his ability based on his observations. *See Hernandez*, 477 F.3d at 214. The BOLO was based on a shooting 20 minutes earlier one mile away. These facts were specific, verifiable, and based on active or recent activity. *Id.*

No. 20-30589

Broadway's arguments focus on each individual fact in the BOLO as not being completely verified by the officer. However, courts should not examine and reject in isolation each of the factors that law enforcement relies on as the basis for reasonable suspicion but should take into account the "totality of the circumstances" with all factors taken together to determine whether they collectively amount to reasonable suspicion of criminal activity. *See Arvizu*, 534 U.S. at 274. Based on the totality of the circumstances, the record supports the conclusion that Officer Jackson had a particularized and objective basis for suspecting legal wrongdoing to justify the stop at its inception. *Id.* The district court did not err in denying the motion to suppress. *See Andres*, 703 F.3d at 832.

AFFIRMED.